UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REBECCA FISHER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE TOWN OF ORANGE; ORANGE )<br>FIRE DEPARTMENT; DENNIS M. )<br>ANNEAR, Fire Chief; MARK T. )<br>VITALE, and JAMES R. YOUNG, JR., )<br>)<br>Defendants. )<br>) | Civil Action No.<br>10-30172-FDS |

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, J.**

This action arises from alleged gender discrimination in the workplace in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Mass. Gen. Laws ch. 151B, § 4. Plaintiff Rebecca Fisher was hired as a full-time firefighter by the Town of Orange, Massachusetts, in October 2007. She alleges that she was discriminated against on the basis of her gender both during the hiring process and while she worked at the Orange Fire Department, and that this discrimination resulted in her constructive discharge in May 2008. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim. In alternative, they argue that all claims against the Orange Fire Department and defendant Dennis M. Annear must be dismissed because they are not properly named defendants in the action. For the following reasons, the motion will be granted in part and denied in part.

**I.     Background**

The facts are stated as alleged in the amended complaint.[1]

Plaintiff Rebecca Fisher resides in Orange, Massachusetts. (Compl. ¶¶ 1-2). At all times relevant to this action, defendant Dennis M. Annear was chief of the Orange Fire Department, where defendants Mark T. Vitale and James R. Young were employed. (*Id.* ¶¶ 4-6).

In July 2007, the Town posted a notice of vacancy for the position of full-time firefighter/EMT with the fire department. (*Id.* ¶ 9). Fisher applied for the position that August, but the hiring process was put on hold in response to her application. (*Id.* ¶ 10). On about October 1, Fisher was informed that she was one of a group of applicants who would be evaluated by an independent assessment center. (*Id.* ¶ 12). The Town had never used this independent assessment process when hiring firefighters in the past. (*Id.*). Nor had it conceived of using the process in filling the vacancy at issue here until Fisher submitted her application, when it decided to do so because she was female. (*Id.*). Fisher participated in the evaluation; she was found qualified for the position and received a top rating. (*Id.* ¶¶ 13-14).

On October 15, Chief Annear, along with Deputies Gale and Blackmer, arranged to interview three candidates, including Fisher. (*Id.* ¶¶ 15, 16). She was the third of the candidates to be interviewed. (*Id.* ¶ 15). Immediately before her interview, Tim Matthews, one of the other applicants, indicated to Fisher that, during his interview, Chief Annear had told him that he was hired for the position. (*Id.* ¶ 17). According to the independent assessment that had been prepared, Matthews was less qualified for the position than Fisher. (*Id.*)

---

[1] As defendants note, plaintiff's opposition brief includes allegations that were not included in the amended complaint. For purposes of this motion, the Court considers only those facts that are alleged in the pleadings. *See, e.g.*, *Miller v. Suffolk Cnty. House of Corr.*, 2002 WL 31194866, at *2 n.1 (D. Mass. Sept. 27, 2002) (declining to consider factual allegations first raised in a response to a dispositive motion).

During Fisher's interview, each of the three interviewers asked Fisher one prepared question. (*Id.* ¶ 16). Deputy Gale then asked Fisher, "do you think you will be accepted by the other firefighters?" (*Id.*). In addition, Deputy Blackmer stated that the Town was "not ready for a female firefighter." (*Id.*).

The next day, Chief Annear contacted Fisher and told her that he had met with a Town administrator who had told him that the Town "could not see a way around" hiring Fisher. (*Id.* ¶ 18). Accordingly, Chief Annear offered Fisher the job. (*Id.*). Later that day, she was appointed as a full-time firefighter. (*Id.* ¶ 19). After a forty-hour training program, she was assigned to Group 2, which consisted of her and another fire department employee, Phillip Sheridan. (*Id.*). Her shift supervisor was defendant Young. (*Id.* ¶ 21).

During the period when she worked for the Orange Fire Department, Fisher contends that Young, Vitale, and other employees of the department engaged in conduct that subjected her to an intimidating, hostile, humiliating, and sexually offensive work environment. (*Id.* ¶ 21). The complaint provides seven examples of such conduct, alleging that:

(1)   Vitale reset the home page on Fisher's computer to a pornographic website;

(2)   Vitale falsely stated to co-workers that Fisher walked around the station wearing only her bra;

(3)   Young made statements to co-workers that Fisher read romance novels and watched soap operas while at the fire station;

(4)   Young told Fisher that she should not have received the job because she did not deserve it;

(5)   Vitale and another coworkers left sexually offensive material at Fisher's work

        station;

(6)    Young and the Town refused to allow Fisher to share a bunk room with other employees and forced her to sleep in a chair in the common room; and

(7)    Annear and the Town failed to provide Fisher with separate sleeping quarters while she was assigned to 24-hour shifts.

(*Id.*).

Fisher also asserts that Chief Annear and the Town were aware or should have been aware of this conduct. (*Id.* ¶ 22). On multiple occasions, Chief Annear was told that Fisher had been told that "pink didn't belong in the fire station." (*Id.*). He had also been made aware that employees were spreading rumors that Fisher wore only a bra during her shift. (*Id.*). Neither Annear nor the Town took any action to investigate or prevent this conduct. (*Id.*).

Because of this harassment, she resigned in May 2008. (*Id.* ¶ 23).

In August 2008, Fisher filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination, sexual harassment, gender harassment, and constructive discharge. (*Id.* ¶ 25). On December 23, 2009, the MCAD issued notice that it had found probable cause to support the allegations. (*Id.* ¶ 26).

Fisher filed this action on August 19, 2010. On November 12, 2010, defendants filed a motion to dismiss the original complaint. During oral argument on that motion, counsel for Fisher indicated its willingness to drop certain counts and to amend the complaint to provide factual details in support of the remaining claims. The Court accordingly granted Fisher leave to file an amended complaint and denied the motion to dismiss without prejudice.

On April 11, 2011, plaintiff filed an amended complaint. It alleges, under Title VII, discrimination in hiring (Count 1), sexual harassment (Count 2), constructive discharge (Count 3), and retaliation (Count 4). It also alleges analogous claims under Mass. Gen. Laws ch. 151B (Counts 5, 6, 7, and 8). Defendants have renewed the motion to dismiss.

## II.     Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III.    Analysis

### A.     Proper Parties to the Lawsuit

Defendants contend that all counts must be dismissed as to two named defendants because they are not proper parties. The first of these defendants is the Orange Fire Department.

Plaintiff agrees that the Fire Department is not a proper party because it is not a separate and independent entity from the Town. Accordingly, the Fire Department will be dismissed from the action.

Defendants next contend that all counts must be dismissed as against Chief Annear because he is named only in his official capacity and, under state and federal law, a suit against a chief of a municipal department in his official capacity is equivalent to a suit against the municipality itself. This argument is without merit. A suit against an individual in his official capacity is simply "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Department of Soc. Services of City of New York*, 436 U.S. 658, 691 n.55 (1978).

Nor do the cases cited by defendants hold to the contrary. It is true that "a suit against a municipal . . . department or its chief (in his or her official capacity) is deemed to be a suit against the municipality itself." *Murphy v. Town of Natick*, 516 F. Supp. 2d 153, 158 (D. Mass. 2007). However, that proposition does not require that plaintiff bring this action only against the municipality and not against its officers. *Brandon v. Holt*, 469 U.S. 464, 471 (1985) (in holding that "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents," implying the propriety of the suit against the official). Thus, because Chief Annear is an officer of the Town, he is properly named as a defendant in his official capacity.

### B. Discriminatory Hiring Claims

Plaintiff's discriminatory hiring claims are based on allegations that defendants expressed a preference for male applicants, implemented an applicant assessment procedure to obstruct plaintiff's application, offered the vacant position to a less-qualified male applicant, and delayed

the final decision to hire her. Defendants contend that plaintiff cannot maintain a claim for discriminatory hiring because plaintiff was in fact hired for the position.

Title VII of the Federal Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire . . . any individual . . . because of such individual's . . . sex. 42 U.S.C. § 2000e-2(a)(1). Generally, to establish a *prima facie* case for failure-to-hire under Title VII, a plaintiff must allege "(i) that the plaintiff[ is a] member[] of a protected class; (ii) that [she was] qualified for the position to which [she] aspired; (iii) that [she was] not hired; and (iv) that a person possessing similar or inferior qualifications was hired." *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010).[2] However, because "the facts necessarily will vary in Title VII cases," this four-part standard is "not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13 (1973); *see also Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (noting that the evaluation of Title VII claims "was never intended to be rigid, mechanized, or ritualistic."). Rather, in any case of alleged gender discrimination, the "central focus of the inquiry [is] whether the employer is treating some people less favorably than others because of their . . . sex." *Furnco Construction*, 438 U.S. at 577 (internal citations and quotations omitted).[3]

Defendants contend that plaintiff cannot establish the third element of a *prima facie* case

---

[2] Similarly, under Massachusetts law, it is an unlawful practice "[f]or an employer . . . because of the . . . sex . . . of any individual to refuse to hire or employ . . . such individual . . . , unless based upon a bona fide occupational qualification." Mass. Gen. Laws ch. 151B § 4(1). A claim for discriminatory hiring under state law is substantially similar to that under federal law.

[3] Courts have accordingly formulated the exact requirements for stating and establishing a *prima facie* case under Title VII in varying ways, depending on the facts of each case. *See, e.g.*, *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 920-21 (1st Cir. 1981); *Garner v. Boorstin*, 690 F.2d 1034, 1035 n. 4 (D.C. Cir. 1982); *Ramsey v. City & Cnty. of Denver*, 907 F.2d 1004, 1007 (10th Cir. 1990).

because the complaint acknowledges that she was in fact hired on October 16, 2007.  (Compl. ¶¶ 18-19).  However, the complaint also alleges that the hiring decision was delayed, that defendants' employees made statements that might be seen as discouraging plaintiff from applying because of her gender, and that a less-qualified male applicant (Matthews) was offered the position first, on October 15.  (*Id.* ¶¶ 11, 16-17).  Even if plaintiff was eventually hired, a substantial delay in the decision to hire her that was attributable to her gender could constitute a discriminatory practice under the statute.  *Cf. Ahern v. Shinseki*, 2009 WL 1615402, at *2 (D.R.I. June 09, 2009) (dismissing claim where plaintiffs had failed to identify "*any* specific adverse action in hiring experienced by any one of the [p]laintiffs.") (emphasis added).

> Although the complaint does not allege that another person was hired instead of plaintiff, that fact likewise is not dispositive.  In discriminatory discharge cases, courts have held that a plaintiff generally establishes the fourth element of a *prima facie* burden if she establishes that "her employer *sought* a replacement for her." (*Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993) (emphasis added).  Here, the complaint alleges substantial (albeit ultimately unsuccessful) efforts by Fire Department officials to avoid hiring plaintiff because of her gender.  It alleges that Chief Annear offered the position to Matthews, that the hiring committee thought the Town "was not ready for a female firefighter," and that Chief Annear offered plaintiff the job only when, after an instruction from a Town administrator, he "could not see a way around" doing so.  (Compl. ¶¶ 16-18).  These allegations, taken as true, support an inference that the department engaged in discriminatory hiring by seeking to hire less-qualified applicants instead of plaintiff because of her gender.  Such allegations are sufficient to state a claim under Title

VII.[4]

### C. Hostile Work Environment

#### 1. Employer Liability

Defendants' next contention is that the complaint does not sufficiently connect the Town to the alleged misconduct.[5]

Title VII prohibits "discriminat[ion] against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). This prohibition encompasses not only economic or tangible discrimination, but also conduct that creates a discriminatorily hostile or abusive environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).[6]

Defendants contend that plaintiff cannot prevail in its claim against the Town because the two employees whose conduct is at issue, Young and Vitale, were merely co-workers of plaintiff and did not occupy supervisory positions. A plaintiff asserting a hostile-environment claim "must satisfy different standards . . . depending on whether the harasser is a supervisor or co-employee." *Wilson v. Moulison North Corp.*, 639 F.3d 1, 7 (1st Cir. 2011). "When coworkers, rather than supervisors, are responsible for the creation and perpetuation of a hostile

---

[4] The fourth element of a *prima facie* case under Mass. Gen. Laws ch. 151B is also satisfied by the allegations of the amended complaint. The Supreme Judicial Court has explicitly held that the fourth element under that law is met by a showing that the employer "sought to fill the position by hiring another individual" with similar qualifications. *Wynn & Wynn*, 431 Mass. at 666.

[5] Defendants do not argue at this stage that the conduct alleged in the complaint is not sufficiently offensive under either federal or state law. In any event, this issue is not suited to evaluation prior to discovery because it "necessarily entail[s] a fact-specific assessment of all the attendant circumstances." *Billings v. Town of Grafton*, 515 F.3d 39, 48 (1st Cir. 2008) (quoting *Conto v. Concord Hosp., Inc.*, 265 F.3d 79, 81 (2001)).

[6] Similarly, the definition of "sexual harassment" that is prohibited by Mass. Gen. Laws ch. 151B, § 4 includes "such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." Mass. Gen. Laws ch. 151B § 1(18)(b).

work environment . . . an employer can only be liable if the harassment is causally connected to some negligence on the employer's part." *Id.* (citing *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir. 2005)). This causal connection exists if "the employer knew or should have known about the harassment yet failed to take prompt and appropriate remedial action." *Id.* (citing *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 401 (1st Cir. 2002)).[7]

Defendants argue that the Town cannot be liable under this standard because it was not on notice of the alleged misconduct. Even assuming, however, that Young and Vitale were coworkers with no supervisory functions, the complaint nonetheless alleges sufficient facts to preclude dismissal. Defendants emphasize that the complaint does not allege that plaintiff herself brought the alleged misconduct to the attention of Chief Annear. The relevant allegation states that the Fire Chief failed to take appropriate action after he was repeatedly informed "that the Plaintiff was being told that 'pink didn't belong in the fire station,'" and that "plaintiff's coworkers were spreading rumors that she walked around the station at night in only a bra." (Compl. ¶ 22). Defendants' focus on plaintiff's use of the passive voice is unwarranted; the law does not require that plaintiff herself brought her co-workers's alleged misconduct to the attention of supervisor, as long as a supervisor was on notice of it. *Crowley*, 303 F.3d at 402 (inferring notice of harassment from statements by a victim's coworkers to supervisory employees). For present purposes, the Court need not determine the precise source (or meaning or credibility) of the alleged statements. Because the allegations support a plausible inference that Chief Annear knew or should have known of misconduct by department employees and

---

[7] By contrast, when alleged misconduct is attributable to a supervisory employee with immediate or successively higher authority over a victimized employee, an employer may be vicariously liable for the resulting hostile work environment without a showing of actual or constructive notice. *Faragher*, 524 U.S. at 807 (1998); *College-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 166 (1987).

failed to act on that knowledge, the complaint states a claim for a hostile work environment.[8]

### 2. Individual Liability

Defendants next contend that the complaint does not state a viable claim against Young and Vitale in their individual capacities.[9]

Count 5 appears to assert, in addition to the hostile-environment claim it raises against the Town, a claim for individual liability against Young and Vitale. Mass. Gen. Laws 151B, § 4(4A) makes it unlawful "[f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter." Subsection 4(5) prohibits aiding, abetting, compelling, or coercing an act that violates any other prohibition of the chapter. Under this second subsection, an individual may be held separately liable if he actively and intentionally provides substantial, supporting assistance to intentional conduct that is prohibited by chapter 151B. *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 481 (1994). A claim of aiding and abetting is wholly derivative of the underlying discrimination claim, and thus cannot be maintained unless the plaintiff has also stated a claim alleging prohibited acts. *Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 122 (2000).

Defendants' first argument is that the complaint does not allege joint activity sufficient to state a claim for aiding and abetting under subsection 4(5). However, the complaint alleges

---

[8] Because the complaint states a claim under the higher standard applicable to misconduct by a co-worker, it is unnecessary to address whether Young was a supervisor.

[9] Defendants also assert that Counts 5, 7, and 8 must be dismissed against Vitale and Young because there is no allegation that they participated in the hiring process or that they were her "employer." However, at this stage, the exact workplace relationships of the parties is not clear. In any event, as plaintiff points out, the individuals could conceivably be liable for aiding and abetting the alleged acts, regardless of their employment position. *See* Mass. Gen. Laws ch. 151B, § 4(5).

misconduct consisting of pranks, rumor-spreading, and verbal harassment, activities that plausibly, if not necessarily, require multiple participants. (Compl. ¶ 21). At least one allegation, that "Vitale and/or one of his coworkers left sexually offensive material at [plaintiff's] work station," expressly suggests joint activity. (*Id.*). These allegations, while not models of proper pleading, provide a sufficient factual basis to state a claim for aiding and abetting.

In alternative, defendants argue that the complaint attributes conduct to Vitale and Young that is not sufficiently offensive to state an underlying claim of discrimination, and that the claims under both subsection 4(4A) and subsection 4(5) must therefore be dismissed. As noted, evaluating whether workplace conduct rises to the level of harassment or discrimination "necessarily entail[s] a fact-specific assessment of all the attendant circumstances." *Billings*, 515 F.3d at 48 (quoting *Conto*, 265 F.3d at 81). In some cases, summary judgment may be "an appropriate vehicle for policing the baseline for [such] claims." *Id.* (quoting *Pomales*, 447 F.3d at 83). But at this stage of the litigation, dismissal is appropriate only if the allegations cannot plausibly refer to conduct that rises to the level of actionable harassment. The Court cannot say that this is the case here, where the complaint alleges lewd pranks, hostile remarks, and refusals to provide plaintiff with adequate sleeping quarters on account of her gender. (Compl. ¶ 22).

### E.     Constructive Discharge

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To state a claim for constructive discharge, as opposed to discriminatory termination, plaintiff must allege that the Town imposed "working conditions so intolerable that a reasonable person would feel

compelled to forsake [her] job rather than to submit to looming indignities." *Landrau-Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 613 (1st Cir. 2000); *see also GTE Products Corp. v. Stewart*, 421 Mass. 22, 34 (1995).

Plaintiff unambiguously alleges that her co-workers' alleged misconduct created an environment that compelled her to resign. Defendants cite cases in which courts have dismissed claims for constructive discharge on summary judgment, after discovery had clarified the nature of the alleged misconduct, because the plaintiff failed to offer "evidence of harassment at least as severe (if not more) than that required for a hostile work environment claim." *Hall v. FMR Corp.*, 667 F. Supp. 2d 185, 202 (D. Mass. 2009); *see also Luciano v. Coca-Cola Enterprises, Inc.*, 307 F. Supp. 2d 308, 321 (D. Mass. 2004). However, it offers no case law that suggests that a complaint such as plaintiff's is inadequate at the pleading stage. In any event, given the nature of the allegations, the Court finds dismissal based on the pleadings unwarranted.

### F.     Retaliation Claim

As to the retaliation claims, defendants first raise a procedural objection that the complaint does not allege that plaintiff exhausted her administrative remedies with respect to those claims by including them in her filings to the MCAD. However, it is unnecessary to consider this issue at this stage of the litigation; failure to exhaust administrative remedies is an affirmative defense that defendant bears the burden of pleading and proving. *Owens v. West*, 182 F. Supp. 2d 180, 190 (D. Mass. 2001).

Defendants next contend that plaintiff has not adequately pleaded the substantive elements of a retaliation claim. Title VII makes it an unlawful act for an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful

employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). To state a claim under this provision, plaintiff must allege that (1) she engaged in protected activity, (2) she suffered some materially adverse action, and (3) the adverse action was causally linked to her protected activity. *Dixon v. International Broth. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007).[10]

Plaintiff contends that the complaint alleges each element of a retaliation claim. First, it alleges that she engaged in a protected activity by seeking employment at the fire department in spite of statements by defendants actively discouraging her from applying. (Compl. ¶¶ 10, 13, 16). Second, it asserts that she was subject to a materially adverse action when employees of the department engaged in conduct that caused a constructive discharge. (*Id.* ¶ 23). Finally, it alleges that the misconduct and harassment that led her to resign were done in retaliation for her opposition to their discriminatory hiring practices and workplace environment. (*Id.* ¶¶ 39, 53).[11]

Defendants contend that applying to a job notwithstanding known discrimination in hiring is not a protected activity under the statute, because it is not an act by which plaintiff "opposed" an unlawful practice. "The term 'oppose,' being left undefined by the statute, carries its ordinary meaning: "to resist or antagonize . . . ; to contend against; to confront; resist; withstand." *Crawford v. Metropolitan Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009). The filing of a complaint of sexual harassment is a typical example of an opposition to an unlawful practice—indeed, it is "precisely the kind [of opposition to

---

[10] The amended complaint also alleges retaliation under state law. The Massachusetts statute imposes an obligation that is substantially similar to those created by Title VII. It provides that no employer may "discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding" under the statute. Mass. Gen. Laws ch. 151B, § 4(4). Although some differences exist in the standards applicable under federal and state law, the pleading standards are essentially the same. *Dixon*, 504 F.3d 73, 81 n.4.

[11] Notably, plaintiff does not allege that any adverse action was taken against her in retaliation for filing either the administrative complaint before the MCAD or for instigating this action.

discrimination] intended for protection" from retaliation by Title VII. *Ruffino v. State Street Bank & Trust Co.*, 908 F. Supp. 1019, 1045 (D. Mass. 1995). But an employee may also "oppose" unlawful practices by tacit conduct without necessarily filing a formal complaint. *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 47 (1st Cir. 2010).

The Court knows of no authority supporting plaintiff's position that one may "oppose" unlawful hiring practices within the meaning of the statute merely by taking a job in spite of those practices. In *Crawford*, the Supreme Court did state that "we would call it 'opposition' if an employee took a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons." *Crawford*, 129 S. Ct. at 851. But neither *Crawford* nor decisions interpreting it have held that a person "opposes" discrimination simply by putting herself in a position where she is subject to it.

Nonetheless, dismissal of plaintiff's retaliation claim is inappropriate at this stage. The complaint does make allegations that, if bolstered in the course of discovery, might support a retaliation claim. Plaintiff attributes some of the alleged harassment to Young, some to Vitale, some to Annear, and some to other, unnamed employees. (Compl. ¶ 21). The complaint also alleges that Young "was identified to her as . . . a person to whom [she] should direct any employment complaints." (*Id.* ¶ 20). Finally, it alleges that Annear was told of certain incidents of verbal harassment (although it is unclear if he heard of them from plaintiff herself). (*Id.* ¶ 22). If these allegations are taken as true, it appears at least plausible that plaintiff voiced complaints based on the alleged misconduct and that, as a result, further harassment ensued in retaliation for

those complaints.[12]

## IV.     Conclusion

For the foregoing reasons, the motion of defendants to dismiss is GRANTED in part as to all counts with respect to defendant Orange Fire Department, and otherwise DENIED.

**So Ordered.**

                                          /s/ F. Dennis Saylor
                                          F. Dennis Saylor IV
                                          United States District Judge

Dated:  February 24, 2012

---

[12] In her opposition memorandum, plaintiff also states that she brought the alleged misconduct to the attention of supervisors. (Mem. Opp., at 16). As defendants note, this statement is not expressly alleged in the complaint, and so cannot be considered for purposes of this motion. However, because the Court finds that other allegations that are in the complaint make it at least plausible that plaintiff did voice complaints, it reaches the same result it would if it did consider the new allegation.